# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| BENCHMARK INSURANCE COMPANY,<br><br>   Plaintiff,<br><br>  vs.<br><br>G.L. CONSTRUCTION COMPANY, *et al.*,<br><br>   Defendants. | 3:14-cv-00326-RCJ-VPC<br><br>**ORDER** |

This case arises from Benchmark Insurance Company's ("Benchmark") alleged failure to comply with its duty to defend G.L. Construction Company ("G.L.") in an underlying lawsuit pursuant to an insurance policy ("the Policy") that Benchmark sold to G.L. effective October 23, 2009 to October 23, 2013. Presently before the Court is G.L. and Gordon Lemich's ("Lemich") Motion for Reconsideration. (ECF No. 38). For the reasons set forth below, the motion is DENIED.

## I. PROCEDURAL HISTORY AND FACTS

On October 29, 2014, the Court issued an order denying G.L. and Lemich's Motion for Summary Judgment as to Benchmark's duty to defend G.L. and Lemich in an underlying lawsuit known as the *Cerberus* Action. In the *Cerberus* Action, G.L. and Lemich are accused of negligent trespass by dumping dirt and other debris onto property ("the Property") owned by Northern Nevada Homes, LLC ("NNH"). The Court found that a genuine dispute of material

fact existed regarding the possibility of coverage under the parties' Insurance Agreement ("the Agreement") and, therefore, summary judgment was improper. Specifically, the Court denied summary judgment because Benchmark presented evidence that created a dispute of material fact of whether G.L.'s dumping onto the Property was an accident. (Oct. 29, 2014 Order 6–8, ECF No. 36). The Court found this issue material to the case because if the dumping was not an accident, then it could not be an "occurrence" under the Agreement. If the dumping was not an "occurrence," then it would not be covered by the Policy and Benchmark would have no duty to defend Movants in the *Cerberus* Action. The Court concluded that the factual dispute regarding G.L.'s alleged permission to dump on the Property was alone a sufficient reason to deny summary judgment. (*Id.* at 8). The Court also ruled that summary judgment was not warranted on G.L. and Lemich's counterclaim of bad faith. G.L. and Lemich (collectively "Movants") now request that the Court reconsider its prior order.

**II.    LEGAL STANDARD**

A motion to reconsider must set forth "some valid reason why the court should reconsider its prior decision" and set "forth facts or law of a strongly convincing nature to persuade the court to reverse its prior decision." *Frasure v. United States*, 256 F. Supp. 2d 1180, 1183 (D. Nev. 2003). Reconsideration is appropriate if the Court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). "A motion for reconsideration is not an avenue to re-litigate the same issues and arguments upon which the court already has ruled." *Brown v. Kinross Gold, U.S.A.*, 378 F. Supp. 2d 1280, 1288 (D. Nev. 2005).

///

### III. DISCUSSION

Movants argue that the Court misapplied the legal standard governing whether an insured has sufficiently demonstrated at the summary judgment stage that the insurer's duty to defend has been triggered. Movants further argue that even if a genuine dispute of material fact exists as to whether G.L.'s dumping of dirt and debris was an accident, and therefore an "occurrence," such a dispute would not preclude the possibility or potential that G.L.'s tender falls within the Policy. Rather, Movants assert that the *potential* for coverage is supported by the Court's conclusion that a triable issue of fact exists. Movants cite to *Montrose Chem. Corp. v. Superior Court*, a California Supreme Court decision, for the proposition that on a motion for summary judgment, once the insured establishes the potential for coverage, the burden is on the insurer to prove that the underlying claim cannot fall within the policy coverage. 861 P.2d 1153, 1161 (Cal. 1993) ("To prevail, the insured must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential*."). While the Court could not locate a Nevada Supreme Court decision either adopting the reasoning in *Montrose* or even citing to *Montrose*, the Court finds that the analysis contained therein would likely be found persuasive by the Nevada Supreme Court. *See United Nat'l Ins. Co.*, 99 P.3d at 1158 (citing California court decisions in articulating the duty to defend standard). Thus, although the *Montrose* decision is not controlling on an issue of Nevada law, the Court nonetheless finds it instructive.

The Court recognizes the well-established principles of Nevada law that "[t]he duty to defend is broader than the duty to indemnify" and that the duty to defend "only exists when there is arguable or possible coverage." *United Nat'l Ins. Co. v. Frontier Ins. Co.*, 99 P.3d 1153, 1158 (Nev. 2004). Indeed, "[a]n insurer owes a duty to defend its insured 'whenever it ascertains facts which give rise to the potential of liability under the policy.'" *N. Ins. Co. of New York v. Nat'l*

3

1   *Faire & Marine Ins. Co.*, 953 F. Supp. 2d 1128, 1134 (D. Nev. 2013) (quoting *United Nat'l Ins.*

2   *Co.*, 99 P.3d at 1158). "[A]n insurer's duty to defend is triggered whenever the potential for

3   indemnification arises, and it continues until this potential for indemnification ceases."

4   *Benchmark Ins. Co. v. Sparks*, 254 P.3d 617, 621 (Nev. 2011).

5   Accordingly, under Nevada law, which recognizes the duty to defend to be quite broad,

6   *see United Nat'l Ins. Co.*, 99 P.3d at 1158, and in light of the analysis applied in *Montrose*, the

7   Court finds that its conclusion in the October 29, 2014 Order regarding the existence of a factual

8   dispute arising from Lemich's belief that G.L. had permission to dump on the Property did not

9   altogether preclude the potential for coverage. Instead, the Court finds that the potential for

10  coverage would exist notwithstanding this disputed factual issue. If the factual issue were

11  resolved in G.L. and Lemich's favor, then that would further demonstrate the possibility of

12  coverage. Therefore, the Court acknowledges that it should not have rested its analysis on that

13  point alone. Since the dispute of fact that the Court cited did not necessarily preclude coverage

14  under the Policy, the Court should have proceeded by evaluating the additional reasons

15  Benchmark provided for why coverage did not extend to the negligent trespass claim in the

16  *Cerberus* Action.

17  Nevertheless, despite this inadvertence, the Court concludes that clear error was not

18  committed because evaluation of the record shows that the dumping occurred before the Policy

19  came into effect and, therefore, G.L.'s actions were not covered by the Policy. The terms of the

20  Policy clearly state that it applies to property damage only if it "is caused by an occurrence

21  which takes place during the policy period regardless of whether or not such occurrence is

22  known or apparent to anyone . . . and [the] property damage resulting from such [an] occurrence

23  first takes place during the policy period, regardless of when the . . . property damage becomes

24

known or apparent to anyone." (Liability Coverage Form §§ A.b(2)–A.b(3), ECF No. 4, Ex. 1).[1]
Movants maintain that "G.L. never dumped any material onto the property now owned by NNH after 2008." (Reply 9, ECF No. 46; *see also* Letter to Westcap Insurance Services 2, ECF No. 4, Ex. 13 (stating that it is the position of G.L. and Lemich "that they were not responsible for dumping any type of material on the subject property after 2008")).  Movants also state that "G.L. informed Benchmark that it had not dumped any materials onto the property in question after 2008." (*Id.* at 10).  However, the Policy did not issue until October 23, 2009. (Movants' Mot. Summ. J. 2, ECF No. 20; *see also* Declarations, Item 2, ECF No. 4, Ex. 1).  Since G.L. maintains that it never dumped any material onto the Property after 2008, (*see* Movants' Mot. Summ. J. 10 (conceding that "[s]imply put, G.L. never dumped any material onto the property now owned by NNH after 2008")), then per the terms of the Agreement, the dumping would not come under the Policy because it occurred outside the policy period.  Accordingly, Benchmark successfully demonstrated in its opposition to Movants' motion for summary judgment that there was no potential for coverage based on the facts that it knew at the time of G.L.'s tender. (*See* Resp. to Mot. Summ. J. 11–12, ECF No. 24).

NNH's allegations that G.L. continued to dump material on the Property until 2013 does not change this conclusion.  Even if NNH has evidence that G.L. and Lemich dumped material after the Policy issued, the Agreement indicates that those acts would still fall outside the Policy's coverage.  The Agreement states that all "property damage arising from an occurrence, or series of related occurrences, will be deemed to first take place at the time of the first such . . . property damage . . . ." (Liability Coverage Form § A.c).  Moreover, an "occurrence" is covered only if it "first takes place during the policy period." (*Id.* § A.b(3)).  It is undisputed that at least

---

[1] The Agreement defines "policy period" as "the term of this policy from its inception date to the earlier of its expiration date, shown in the declarations, or the date of any cancellation." (Liability Coverage Form § 5.17).

1  some of G.L.'s dumping occurred prior to 2008, before the Policy's inception in October of
2  2009.  Accordingly, under these provisions of the Agreement, any dumping that may have
3  occurred after 2008 would still be deemed to have occurred before 2008 and therefore would be
4  outside the policy period and not covered by the Policy.  Since the duty to defend is triggered
5  only if coverage is arguable or possible, *see United Nat'l Ins. Co.*, 99 P.3d at 1158, Movants
6  were not entitled to summary judgment and the Court did not commit clear error warranting
7  reversal of the October 29, 2014 Order. *See Frasure*, 256 F. Supp. 2d at 1183.

8       Likewise, the Court did not commit clear error in denying Movants' motion for summary
9  judgment on their claim of bad faith.  "To establish a prima facie case of bad-faith refusal to pay
10  an insurance claim, the plaintiff must establish that the insurer had no reasonable basis for
11  disputing coverage, and that the insurer knew or recklessly disregarded the fact that there was no
12  reasonable basis for disputing coverage." *Powers v. United Servs. Auto. Ass'n*, 962 P.2d 596, 604
13  (Nev. 1998).  Movants clearly failed to demonstrate, as a matter of law, that Benchmark lacked a
14  reasonable basis for disputing coverage.  As stated above, Movants are adamant that they did not
15  dump any materials on the property after 2008, which was before the inception of the Policy and
16  therefore outside the coverage period.  Because G.L. and Lemich admit that the dumping started
17  as early as 2004, (*see* Movants' Mot. Summ. J. 3), Benchmark retained a reasonable basis for
18  denying coverage notwithstanding NNH's claims that the dumping continued through 2013 due
19  to the provisions discussed above.  Therefore, the Court's denial of Movants' motion for
20  summary judgment on the bad faith claim was proper.
21  ///
22  ///
23  ///
24

6

**CONCLUSION**

IT IS HEREBY ORDERED that G.L. and Lemich's Motion for Reconsideration (ECF No. 38) is DENIED.

IT IS SO ORDERED.

Dated: January 9, 2015

_____
ROBERT C. JONES
United States District Judge